AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>one Laptop Computer- Gray HP Spectre x360 laptop,<br>Serial Number: 5CD0024RQN | )<br>)<br>)  Case No. 2:21-cm-14<br>)<br>)<br>) |

**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Feb 5, 2021

OFFICE OF THE CLERK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Western___ District of ___Arkansas___ *(identify the person or describe property to be searched and give its location)*: See "Attachment A3"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See "Attachment B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___922(o)___, and the application is based on these facts: See "Affidavit attachment"

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent BRENT HOFBAUER, USSS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/05/2021

City and state: Fort Smith, Arkansas

*Judge's signature*

MARK E. FORD, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Brent Hofbauer, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Secret Service (USSS) and have been since April 2019. During my tenure with the Secret Service, I have been assigned to investigate violations of federal laws, including violations of Title 18 of the United States Code, and specifically those related to counterfeit currency, in violation of 18 U.S.C. § 471 and 18 U.S.C. § 472. I received criminal investigative training at the Federal Law Enforcement Training Center in Glynco, Georgia, and at the James J. Rowley Secret Service Training Center in Beltsville, Maryland, pertaining to criminal investigations of counterfeit currency, bank fraud, money laundering, wire fraud, access device fraud, and identity theft. I am an investigative and law enforcement officer of the United States, in that I am empowered by law to conduct investigations and to make arrests for felony offenses, under authority of Title 18, U.S.C. § 3056. As a result of my personal participation in the investigation of matters discussed in this affidavit, I am familiar with the facts and circumstances of this case. The facts and circumstances discussed below were derived through my examination of records, my conversation with other law enforcement offices, various other sources of information, and through my knowledge, experience and training.

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following "**TARGET DEVICES**", further described in Attachments A1, A2, and A3 for the things described in Attachment B:

    a. **TARGET DEVICE 1:** Cellular Phone – white iPhone, IMEI UNKNOWN, recovered from the passenger compartment of the 2020 Chevy Malibu sedan

bearing Florida tag no. LLIK82 on September 19, 2020, as described in Attachment A1.

b. **TARGET DEVICE 2**: Cellular Phone- black iPhone, IMEI UNKNOWN, recovered from the passenger compartment of the 2020 Chevy Malibu sedan bearing Florida tag no. LLIK82 on September 19, 2020, as described in Attachment A2.

c. **TARGET DEVICE 3**: Laptop Computer- Gray HP Spectre x360 laptop, Serial Number: 5CD0024RQN, recovered from the passenger-side front floorboard of the 2020 Chevy Malibu sedan bearing Florida tag no. LLIK82 on September 19, 2020, as described in Attachment A3.

3. The **TARGET DEVICES** are currently being stored in a secure fashion at the United States Secret Service Little Rock Field Office located at 111 Center Street, Little Rock, AR 72201. The information in this affidavit is based upon my own knowledge, records furnished to me in my official capacity, and information provided by other law enforcement officials. This affidavit does not contain every material fact that I have learned during the course of this investigation. Rather, I have set forth only those facts necessary to establish probable cause to believe that evidence, fruits, and/or property designed for use, intended for use, or used in committing violations of 18 U.S.C. §471 (Manufacturing Counterfeit Currency) and 18 U.S.C. § 472 (Pass, Sell, Possess, or Utter Counterfeit Currency) by JAWANZA KENYTTA BULLARD ("J.K. BULLARD") JR., COURTNEY RENEE ELLISON ("ELLISON"), and JACHIYA DEA BULLARD ("J.D. BULLARD"), in the Western District of Arkansas and elsewhere, are likely to be found on the **TARGET DEVICES**. The applied-for warrant seeks authorization to conduct a forensic examination of the **TARGET DEVICES** for the purpose of identifying and seizing

electronically stored information particularly described in Attachment B and is intended to show only that there is sufficient probable cause for the requested warrant.

## PROBABLE CAUSE

4. On September 20, 2020, Captain Jeff Wood with the Johnson County Sheriff's Office contacted the United States Secret Service Little Rock Field Office in reference to a counterfeit currency investigation. Captain Wood advised that Johnson County Sheriff's Deputy Brent Scott initiated a traffic stop for speeding on a 2020 Chevy Malibu, bearing Florida license plate number LLIK82, along I-40 westbound near mile marker 45 in Johnson County.

5. During Deputy Scott's investigation, he identified J.K. BULLARD as the driver, ELLISON as the front seat passenger, and J.D. BULLARD as the rear seat passenger in the vehicle. Deputy Scott directed J.K. BULLARD to step out of the vehicle, at which time the officer observed an empty holster on J.K. BULLARD's waistband. Deputy Scott conducted a criminal history query that revealed J.K. BULLARD had previously been arrested in Georgia on a felony charge. Deputy Scott questioned J.K. BULLARD about where the firearm was located inside the vehicle. He claimed that ELLISON had taken the firearm and placed it somewhere in the backseat of the vehicle. Deputy Scott returned to the vehicle and located the firearm under the rear driver's side seat.

6. Furthermore, Deputy Scott determined that J.D. BULLARD was the authorized renter of the vehicle. J.D. BULLARD gave Deputy Scott consent to search the vehicle. J.D. BULLARD indicated that the group was travelling from Savannah, Georgia, to Glendale, Arizona. During his initial search, Deputy Scott located three $20 bills that he believed were counterfeit inside the driver's side door panel. Deputy Scott believed the bills to be counterfeit because they appeared to be printed on new paper, were smooth to the touch but appeared to have wrinkles.

7. Deputy Scott asked J.K. Bullard about the counterfeit bills, and J.K. BULLARD claimed to have received the counterfeit bills as change from a Burger King but did not know the location of the Burger King. When Deputy Scott asked J.D. BULLARD and ELLISON about the bills, both claimed they knew the bills were counterfeit and they received the three counterfeit $20 bills as change from a transaction they made at Walmart, but could not remember the location of the Walmart. J.D. BULLARD and ELLISON indicated that the group had discussed the counterfeit nature of the bills prior to the stop.

8. Additionally, Deputy Scott located TARGET DEVICE 1 and TARGET DEVICE 2 in the passenger compartment of the vehicle, and TARGET DEVICE 3 from the passenger-side front floorboard of the vehicle.

9. Deputy Scott proceeded to search the trunk of the vehicle and located a large black duffle bag containing the following items:

    A. a desktop style printer with a paper overlay on the screen with two cut-outs the size of Federal Reserve Notes (FRNs)

    B. three pairs of scissors

    C. ink cartridges

    D. a cutting board

    E. Fifty-four uncut sheets bearing two separate $20 FRN images on the front of the sheet displaying serial number B36285922F on the left side of the sheet and serial number ME47206185C on the right side of the sheet. The back of the cream color sheet contains two back plate images.

      F. Twenty-nine uncut sheets bearing two separate $20 FRN images displaying serial number JB36285922F on the left side and serial number JB36285922F on the right side.

      G. Ninety-nine uncut sheets bearing two separate $20 FRN images displaying serial number ME47206185C on the left side of the sheet and serial number JB36285922F on the right side of the sheet.

10. On September 21, 2020, Senior Special Agent Sean Sammons and I responded to the Johnson County Sheriff's Office to interview J.K. and J.D. BULLARD, and ELLISON. All three subjects refused to waive their Miranda Rights and speak with myself and SSA Sammons.

11. Also on September 21, 2020, Agent Sammons and I reviewed the suspected counterfeit currency that was seized as evidence by the Johnson County Sheriff's Office and confirmed that it was in fact counterfeit currency.

12. The **TARGET DEVICES** were turned over to the USSS on January 6, 2020. The **TARGET DEVICES** are currently being stored in a secure fashion at the United States Secret Service Little Rock Field Office located at 111 Center Street, Little Rock, AR 72201. In my training and experience, I know that the **TARGET DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Target Devices first came into the possession of the USSS.

13. Based on my knowledge, training and experience, individuals will typically carry their cell phones, sometimes multiple cell phones, with them at all times and utilize their phone(s) to plan, organize and commit criminal acts, communicate with victims or coconspirators; and discuss the facts of criminal activity before and after the crime occurs. Additionally, cell phones can collect and store geo-data which can place a person in a particular place at a particular time.

The search warrant will be used for a visual inspection and a forensic examination/download of the mobile device to be completed in order to obtain any and all stored electronic information, including, but not limited to; user account information, stored phone information, images, text messages and messaging applications, videos, documents, e-mails, internet activity, call logs, contact information, phonebook information, social media, GPS (Global Positioning System) data and any deleted data.

14. I know from my training and experience that computers and electronic storage devices could contain information and evidence pertaining to manufacturing, possessing, and passing counterfeit currency. Specifically, through the manufacturing or printing of counterfeit currency. Examining data stored on such devices can uncover, among other things, evidence that reveals or suggest (i) who possessed or used the devices, (ii) with whom the user communicated, (iii) where the devices were located, (iv) to what networks the devices connected, (v) the contents of communications, (vi) the programs installed and used, (vii) efforts to alter and/or destroy digital records, (viii) internet searches, and (ix) images of genuine or counterfeit currency.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

15. Searches and seizures of evidence from computers and cellphones commonly require agents to download or copy information from the computers and cellphones and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons.

      a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information.

> Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.
>
> b. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

16. Searching computer systems requires the use of precise scientific procedures designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not carefully followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential for conducting a

complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

17. The volume of data stored on many computer systems and storage devices is typically extremely high. A single megabyte of storage space is the equivalent of 500 double spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double spaced pages of text. Storage devices capable of storing 1000+ gigabytes or 1 terabyte of data are now commonplace in desktop computers. Consequently, each desktop computer found during a search can easily contain the equivalent of hundreds of millions of pages of data.

   a. Computer users can conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also conceal data by using encryption. Encrypted data storage devices require a password or other access code to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and unremarkable file. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband or instrumentalities of a crime.

18. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit. In cases involving access device fraud where the evidence consists partly of graphics files, the monitor(s) may be essential for a

thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

## CONCLUSION

19. I submit that this affidavit supports probable cause for a warrant to search the **TARGET DEVICES** in Attachments A1, A2, and A3 and seize the items described in Attachment B.

Brent Hofbauer
Special Agent, United States Secret Service

Subscribed and sworn to before me on this 5th day of February 2021.

HON. MARK E. FORD
United States Magistrate Judge
Western District of Arkansas

## ATTACHMENT A3

## DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is one Laptop Computer- Gray HP Spectre x360 laptop, Serial Number: 5CD0024RQN, recovered from the passenger-side front floorboard of the 2020 Chevy Malibu sedan bearing Florida tag no. LLIK82 on September 19, 2020 pursuant to a probable cause arrest following a traffic stop initiated by Johnson County Sheriff's Office, which is currently being stored in a secure fashion at the United States Secret Service Little Rock Field Office located at 111 Center Street, Little Rock, AR 72201.

## ATTACHMENT B

LIST OF ITEMS TO BE SEIZED

All records and information on the **TARGET DEVICES** relating to violations of 18 U.S.C. § 471 (Manufacturing Counterfeit Currency) and 18 U.S.C. § 472 (Pass, Sell, Possess, or Utter Counterfeit Currency) involving JAWANZA KENYTTA BULLARD JR, JACHIYA DEA BULLARD, and COURTNEY RENEE ELLISON in the Eastern District of Arkansas and elsewhere on or before September 20, 2020 including:

a. Records, documents, programs, applications, or materials pertaining to applications for, or use of genuine or counterfeit currency;

b. Software, devices, or tools used to obtain, create, or use genuine or counterfeit currency.

c. Data, records, documents (including e-mails, electronic chats, and messages), or information reflecting or referencing purchases or sales of merchandise, personal information, securities, electronic currency, and other valuable things, including checks;

d. Records, documents, programs, applications, or materials relating to production of counterfeit currency;

e. Records of any communications between Jawanza Bullard, Jachiya Bullard, and Courtney Ellison;

f. Bank records, checks, credit card bills, account information, account numbers, credit cards, debit cards, and other financial records;

g. Records of travel and/or movements by Jawanza Bullard, Jachiya bullard, and/or Courtney Ellison including but not limited to text messages, emails, application data, receipts, records of travel, and receipts from hotel rooms;

h. Any and all records of conversation and the passage of information between JAWANZA BULLARD, JACHIYA BULLARD, and COURTNEY ELLISON, and/or persons unknown for the furtherance of violation(s) of 18 U.S.C. § 471 (Manufacturing Counterfeit Currency) and 18 U.S.C. § 472 (Pass, Sell, Possess, or Utter Counterfeit Currency);

i. Any Internet history, as it pertains or relates to unlawfully obtaining/manufacturing/passing of counterfeit currency;

j. Audio recordings, pictures, video recordings, or still captured images of genuine or counterfeit currency;

k. Any computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, peer-to-peer filing sharing software;

l. Any files, documents, or information that show ownership of the items to be searched;

m. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider;

n. Passwords, encryption keys, and other access devices that may be necessary to access the **TARGET DEVICES**;

o. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the **TARGET DEVICES**;

p. Records of or information about Internet Protocol addresses used by the **TARGET DEVICES**;

q. Records of or information about the **TARGET DEVICES'** Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

r. Evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data), any photographic form, any physically created evidence (such as writings in a notebook and body fluids).